[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married on April 28, 1990 in Wilmington, Delaware. The plaintiff resided continuously in this state for at least twelve months before the date of filing the complaint; therefore, the court has jurisdiction. There are three children who are issue of this marriage: Ryan Bell, born February 6, 1991; Justin Bell, born April 5, 1992; and Spencer Bell, born August 25, 1997.
The plaintiff husband, Roderick Bell, is a thirty-year old factory inspector for an aerospace component manufacturer. A high school graduate, the plaintiff has received some advanced training. At the time of trial, he was taking college level courses in order to qualify for a promotion. The plaintiff's, net weekly wage was four hundred and forty-five dollars and ninety-six cents ($445.96). Although he had been able to accrue overtime pay in the past, deteriorating economic conditions since the fall of 2001 eliminated that opportunity.
The plaintiff held other jobs during the marriage. He worked for a decade at the Allied Signal Corporation in Stratford, Connecticut. During that time, as an employee with relatively little seniority, he was laid-off many times. When the company relocated to Arizona in 1987, it permanently eliminated the plaintiff's position.[1]
The plaintiff received a government grant through which he acquired skills in audio research. In 1998 he was hired by ESPN in Bristol, Connecticut, where he worked as a researcher and a producer.[2] The plaintiff voluntarily left that position, but soon secured his immediate employment.
During the marriage, the plaintiff also performed in a local band. Unfortunately, as the family's economic situation worsened, the plaintiff sold much of his equipment. He eventually abandoned that hobby and source of supplemental income.
Currently the plaintiff is in generally good health. He lives in a two-bedroom apartment that he shares with his uncle. CT Page 862
The defendant wife, Lorraine Durnan Bell, is a college graduate. She earned a bachelor's degree in education and psychology while the couple was still married, using family funds to pay for a part of her education.[3] The State of Connecticut certified the defendant as a teacher. She was employed as an elementary school teacher in the Town of Stratford, earning $37,000 per year until her relocation to Pennsylvania.
The defendant now lives with her extended family in Pennsylvania where she works as a teacher. She is also in good health. Although the defendant claims that she now has day care expenses, she has not provided adequate documentation of such.[3]
The primary asset of this marriage was the marital home located at 25 Platt Street in Stratford, Connecticut. The parties purchased the property in 1994. The court finds that the bulk of the ten thousand ($10,000) dollars down-payment for the home came from the 401K account that the plaintiff had accrued while working at Allied Signal. All of that money was earned before the parties married. Indeed, subsequent to their marriage, the parties were not capable of saving for the future. By 1999, they filed for bankruptcy. After the commencement of this action, the parties sold the Platt Street home. They realized a profit of forty-seven thousand ($47,000) dollars. Part of that profit was the direct result of the defendant's efforts to improve the condition of the home prior to its sale. Additionally, she was able to sell the home without the services of a realtor.
When defendant relocated, she took with her the contents of the marital house. Although the defendant contends that much of the home furnishings were distributed to charities in the Stratford area, the court credits plaintiff's testimony that the defendant moved the bulk the furnishings to Pennsylvania.
The only other significant marital asset is a baseball card collection. Both parties claim that they wish to maintain the collection in order to finance their sons' college educational. The parties have never had the cards appraised.[4] They are currently under the defendant's control.
This court must address the causes of the marital breakdown. Although married for over a decade, the parties in this action never developed a full partnership. Each was preoccupied with his or her own interests and concerns. The plaintiff had filed for divorce in 1992, but eventually attempted to reconcile with the defendant. CT Page 863
To their credit, both plaintiff and defendant attended joint counseling. The benefit of that, unfortunately, was undercut because the defendant spent a good portion of her free time partying with local friends or visiting with her family in Pennsylvania. Additionally, the defendant engaged in an extra marital affair during this time.
The defendant believes that the plaintiff was overly preoccupied with money. Financial issues plagued this marriage. The parties did not have enough to meet their daily expenses. In 1999 they filed for bankruptcy. The court credits the plaintiff's testimony that the defendant had unreasonable spending habits.[5]
The defendant also suggests that the plaintiff was overly occupied with his music. This suggestion is belied by the fact the plaintiff sold his music equipment in order to pay household expenses.[6] That is hardly the type of conduct one would expect of an individual obsessed with his music hobby.
The evidence is unequivocal that the defendant bears primary responsibility for this marital breakdown.
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes section46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981).[7]
The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. The parties shall have joint legal custody of the minor children issue of the marriage:
Ryan Bell, born February 6, 1991;
Justin Bell, born April 5, 1992; and
Spencer Bell, born August 25, 1997.
3. A. The primary residence of the children shall be with the defendant. The plaintiff shall have reasonable, flexible and liberal rights of visitation. That Contact shall include visits every alternate weekend. The weekend schedule shall begin thirty days from the date of this decision. The plaintiff shall be solely responsible for the costs associated with the transportation of these children. CT Page 864
 B. The plaintiff shall have the option of having the children on two separate weeks of uninterrupted time during the summer school vacation and will notify the defendant in writing by May 31st of the weeks that he intends to exercise that access.
 C. The parties shall alternate the following legal holidays and school vacations with the plaintiff having Schedule A for odd-numbered years and Schedule B for even-numbered years. The sharing of said holidays and school vacations shall supersede the regular visitation schedule. Said holidays shall be designated from 9 a.m. until 7 p.m. unless otherwise agreed by the parties or otherwise designated herein. This schedule may be modified upon agreement of the parties.
 SCHEDULE A: Easter weekend; spring school vacation; Memorial Day weekend; Christmas Eve Day and Christmas Day.
 SCHEDULE B: Winter School Vacation; Independence Day; Labor Day weekend; Thanksgiving weekend; Christmas vacation as of December 26th; New Year's Eve and New Year's Day.
 D. Regardless of the regular access schedule, the defendant shall have the children with her every Mother's Day and the plaintiff shall have the children with him every Father's Day. Said day is designated to be from 9 a.m. until 7 p.m. unless otherwise agreed by the parties.
 E. Each of the parties shall have a continuing role in providing a sound moral, social, economic and educational environment for their children. The parties shall exert their best efforts to work cooperatively in developing future plans consistent with the best interests of said children in amicably resolving such disputes as may arise.
 F. Each of the parties agrees to keep the other reasonably informed of the whereabouts of said children at all times. The parties further agree that if either of them has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of said children, the defendant or plaintiff, as the case may be, shall promptly notify the other, and both parents shall have unlimited access privileges, consistent with the circumstances, for as long as the situation pertains.
 G. On all matters of importance relating to the children's health and education and general welfare, the parties shall confer with each CT Page 865 other with a view to adopting and following a harmonious policy. Both parties shall have access to all school and medical records of the children and no third party shall deny access to said records to either parent as a result of the custody agreement between the parties.
 H. Both parents will in the utmost good faith encourage and foster the maximum relations of love, affection and respect between the children and the other parent. Neither parent will in any way impede, obstruct or interfere with the other parent's right of companionship with the children. Neither parent will engage in making disparaging remarks or criticize the other parent, nor allow anybody else to do so in the presence of the children. Neither parent will act in a manner that undermines the role of the other parent.
4. The plaintiff shall provide to or for the benefit of the minor children health insurance as may be available through his employment, and the defendant shall reimburse the plaintiff for one-half of the cost thereof. Any unreimbursed medical, dental, psycho-logical or therapy expenses incurred on behalf of the minor child shall be shared equally by the parties.
5. The defendant shall pay to the plaintiff periodic alimony in the amount of one dollar ($1.00) per month. The alimony award shall terminate upon the happening of any of the following events, whichever first occurs: (a) the plaintiff's death; (b) the plaintiff's remarriage; (c) the plaintiff's cohabitation; or (d) ten years from the date of dissolution.
6. The plaintiff shall pay to the defendant periodic alimony in the amount of one dollar ($1.00) per month. The alimony award shall terminate upon the happening of any of the following events, whichever first occurs: (a) the defendant's death; (b) the defendant's remarriage; (c) the defendant's cohabitation; or (d) ten years from the date of dissolution.
7. The plaintiff shall pay to the defendant for child support the sum of one hundred and ninety-one ($191.00) dollars per week, an amount in accordance with the Child Support Guidelines. That amount will be reduced as each minor child completes the twelfth grade or attains the age of 19, provided that such child is a full time high school student and resides with the plaintiff. If the child is not in high school, then the child support for that particular child ends when the child attains the age of eighteen. CT Page 866
8. The parties shall be entitled to share the dependency exemption for the minor children. While there are three available dependency exemptions, during even numbered years the plaintiff shall claim two exemptions and the defendant shall claim one. During odd numbered years, the defendant shall claim two exemptions and the plaintiff shall claim one. While there two available exemptions, the exemptions shall be shared evenly. When there is only one available dependency exemption, during even numbered years the plaintiff shall claim the exemption. During odd numbered years, the defendant shall claim the exemption.
 In order to claim the dependency exemption, the plaintiff must be current in his child support obligation.
9. The plaintiff shall maintain the life insurance policy set forth in his financial affidavit for the benefit of the minor children until the youngest child of the marriage shall reach the age of majority.
10. The proceeds from the sale of the Platt Street home shall be evenly distributed. Each party is entitled to twenty-three thousand, five hundred ($23,500) dollars.
11. The defendant is awarded all of the furniture and furnishings located at the marital residence with the exception of all music instruments and equipment, which shall be the property of the plaintiff.
12. The defendant is ordered to maintain the baseball card collection for the benefit of the three minor children. She shall, at her sole expense, immediately secure an independent professional appraisal of the cards. A copy of said appraisal shall be forwarded to the plaintiff no later than July 1, 2002.
13. The parties are responsible for the debts listed on the their separate financial affidavits. Each shall indemnify and hold the other harmless from any further liability from the debts as assigned to them by this order.
14. The plaintiff's interest in a retirement plan with his former employer, Allied Signal, shall remain his free of any claims by the defendant. The defendant shall execute any document necessary to terminate any rights she may have in the plan as may be requested by the plaintiff.
15. The defendant's interest in a retirement plan with her former employer, Waldbaum's Supermarkets, shall remain hers free of any claims by the plaintiff. The plaintiff shall execute any CT Page 867 document necessary to terminate any rights he may have in the plan as may be requested by the defendant.
16. Each party shall pay his or her own attorney's fees.
17. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
18. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
JULIA DiCOCCO DEWEY, J.